PHILLIPS et al., Appellants,

v.

DAYTON POWER AND LIGHT COMPANY, Appellee.

[Cite as *Phillips v. Dayton Power & Light Co.* (1996), 111 Ohio App.3d 433.]

Court of Appeals of Ohio,
Second District, Miami County.

No. 95–CA–57.

Decided May 31, 1996.

434

435

**436**

Michael Garth Moore, for appellants.

Bieser, Greer & Landis and Michael W. Krumholtz, for appellee.

FREDERICK N. YOUNG, Judge.

John Phillips and Bonnie Thompson, plaintiffs-appellants, appeal the trial court's judgment in favor of the Dayton Power & Light Company ("DP & L"), defendant-appellee.

## I

This cause of action has its origin in an injury suffered by Roger Phillips, the son of John Phillips and Bonnie Thompson, on September 8, 1990. Roger, who was then sixteen years old, climbed a DP & L electrical transmission tower, was struck by an arc of electricity, and fell over forty feet to the ground. As a result, Roger suffered extensive injuries including burns over fifty percent of his body.

On January 28, 1992, Roger's parents (collectively, "Phillips") filed a suit against DP & L. In response, DP & L filed a motion for summary judgment, which was granted by the trial court. Phillips then appealed that decision to this court. On February 9, 1994, in a split decision, we reversed the summary judgment and ordered the case to trial.

The case was heard in May 1995. At the close of trial, the jury was given interrogatories and general verdict forms to render decisions on whether DP & L was negligent or guilty of wanton misconduct. On May 22, 1995, the jury returned the general verdicts, finding that DP & L was wanton but not negligent, and awarding Phillips zero damages.

Upon testing the general verdicts against the jury's interrogatory answers, the court determined that the two interrogatories on the issue of wanton misconduct were in conflict, and that one of those interrogatories was in conflict with the general verdict. In particular, the court found that the following interrogatory answers were in conflict:

"Jury Interrogatory 2

"Did the Dayton Power & Light Company utilize any care in the maintenance or operation of the electrical transmission tower involved in the accident at pertinent times prior to or at the time of the accident?

"Yes X No __

"Jury Interrogatory F

"Do you find that the defendant engaged in wanton misconduct at a time when there was a great probability of substantial injury, and was that conduct the proximate cause of plaintiff's injuries?

"Yes X No __ "

Given that wanton misconduct is the absence of all care, the court found that the interrogatories were inconsistent because they established both that DP & L exercised care and that DP & L did not exercise any care.

Phillips claimed that this inconsistency was due to an ambiguity in interrogatory No. 2, which Phillips attributed to its disjunctive wording. He argued that the jury's affirmative response to that interrogatory could have been construed as meaning that DP & L exercised some care in the past, but not at the time of the accident. Therefore, he moved the court to disregard that interrogatory.

Alternatively, Phillips requested that the court attempt to reconcile the interrogatory with interrogatory F and the general verdict. As support for his contention, Phillips cited case law holding that when an interrogatory is subject to two possible meanings, the court should construe the ambiguity against the party who drafted it and accept the meaning which will place it in harmony with the other interrogatories and the general verdict. Phillips asserted that the interrogatory could be placed in harmony with the other interrogatories and the general verdict by accepting interrogatory No. 2 as meaning that DP & L had exercised some care in the past, but not at the time of the accident. This reading of the interrogatory, Phillips insisted, would have supported the jury's finding of wanton misconduct.

Conversely, DP & L moved the court for a new trial, citing case law holding that when a court is faced with inconsistent answers to interrogatories and it is impossible to harmonize the answers, they cancel each other out and should be disregarded by the court. DP & L maintained that the answers were impossible to harmonize because the language restricted the prior exercise of care to "pertinent times." DP & L asserted that no matter what time the jury determined that it exercised care, it had to have been at a time pertinent to the accident. Therefore, the jury's affirmative response to interrogatory No. 2 was necessarily irreconcilable with its response to interrogatory F.

After considering the parties' arguments, the trial court overruled both parties' motions and resubmitted the interrogatories to the jury under the authority of *Elio v. Akron Transp. Co.* (1947), 147 Ohio St. 363, 34 O.O. 301, 71 N.E.2d 707. The Supreme Court in *Elio* held that a trial court may properly resubmit interrogatories to the jury in certain situations. The court wrote:

" 'In some instances issues, questions or interrogatories may be resubmitted * * * to remedy or correct defects in their original answers * * * as where * * * the jury have not answered certain questions or interrogatories or they have given answers which are insufficient, incomplete, improper, irregular, evasive, unresponsive, indefinite, uncertain, contradictory, or not sufficiently clear, or show a misconception of the questions. However, the authority to adopt this procedure is very limited; it should not be allowed or required to reverse its

findings on vital issues of fact depending on the evidence.'" *Id.* at 371, 34 O.O. at 305, 71 N.E.2d at 711, quoting 64 Corpus Juris (1933) 1184–1185, Section 972.

Upon resubmitting the two interrogatories to the jury, without the general verdict, the court instructed the jury:

"The Court has determined that the answers to Interrogatories 2 and F are contradictory, and asks you to reconsider your answer to either one of them upon reviewing the evidence and the Court's instructions.

" * * * You may, but are not required to change either of your answers to these interrogatories."

During the jury's deliberation, the jury sent a note to the judge in which they wrote:

"We the jury, would like you to know that we knew yesterday that this verdict might be contradictory. Interrogatory # 2 states that DP & L did utilize 'any' care, but in our minds it was the barest minimum. In that regard, Interrogatory F *was* found that DP & L did engage in wanton misconduct because we wanted to show DP & L that even though they were operating 'technically' within the Code, it was not enough & certainly more should be done.

"Because we are unanimous in agreement that the plaintiff receive no monetary reward, we found $0.00. We felt that the only way we could do this was finding DP & L *did* engage in wanton misconduct.

"Through these interrogatories, is there a way to express our concern regarding improved safety measures by DP & L while finding that 'technically' they were within the Code?" (Emphasis added.)

The judge responded that he could not answer their question.

Ultimately, the jury changed their response to interrogatory F, whether DP & L had engaged in wanton misconduct, to "no." Their answer to interrogatory No. 2 remained the same. Their revised answer to interrogatory F made their interrogatories internally consistent, but placed both interrogatories in conflict with the general verdict. To resolve this inconsistency, the court proceeded under Civ.R. 49(B) to disregard the general verdict and to enter a verdict on the answers in favor of DP & L.

On July 19, 1995, Phillips moved the court for a new trial. On August 25, 1995, the trial court overruled his motion, holding that under *Elio, supra,* the court properly resubmitted the inconsistent interrogatories to the jury. Phillips now brings this timely appeal.

## II

In his first assignment of error, he states:

"The trial court erred to the prejudice of plaintiff-appellants by submitting an improper special interrogatory to the jury."

## A

Phillips contends that interrogatory No. 2 was improper because it did not address a determinative issue as required by Civ.R. 49(B). Interrogatory No. 2 asked the jury to determine whether DP & L exercised any care "at pertinent times prior to or at the time of the accident." Phillips argues that this interrogatory was not determinative because it asked whether DP & L exercised care in the past. Phillips claims past care was not relevant; instead, he insists that the only relevant care was that in place at the time of the accident.

Assuming that past care was not relevant, Phillips further reasons that the jury's "yes" response to the interrogatory was indeterminate because it could have meant "yes, DP & L exercised care in the past, but did not at the time of the accident." Thus, even an affirmative response, Phillips maintains, would not have tested the verdict finding wanton misconduct.

■ We disagree. Civ.R. 49(B) provides:

"The court shall submit written interrogatories to the jury, together with appropriate forms for a general verdict, upon request of any party prior to the commencement of argument. * * * The interrogatories may be directed to one or more *determinative issues*, whether issue of fact or mixed issues of fact or law." (Emphasis added.)

Although Civ.R. 49 provides that the court "shall" submit written interrogatories upon the request of a party, it does not require that the court act as a " 'mere conduit who must submit all interrogatories counsel may propose.' " *Ramage v. Cent. Ohio Emergency Serv., Inc.* (1992), 64 Ohio St.3d 97, 107, 592 N.E.2d 828, 835–836, quoting *Ragone v. Vitali & Beltrami, Jr., Inc.* (1975), 42 Ohio St.2d 161, 165, 71 O.O.2d 164, 166, 327 N.E.2d 645, 648–649. The court must reject proposed interrogatories that do not address determinative issues, and the court retains limited discretion to reject proposed interrogatories that are ambiguous, redundant, confusing, or otherwise legally objectionable. *Ramage, supra,* at paragraph three of the syllabus.

■ Determinative issues are defined as " 'ultimate issues which when decided will definitely settle the controversy between or among the parties, so as to leave nothing for the court to do but to enter judgment for the party or parties in whose favor such determinative issues have been resolved by the jury.' " *Ziegler v. Wendel Poultry Serv., Inc.* (1993), 67 Ohio St.3d 10, 15, 615 N.E.2d 1022, 1028, quoting *Miller v. McAllister* (1959), 169 Ohio St. 487, 494, 8 O.O.2d 485, 490, 160 N.E.2d 231, 237. "Similarly, the 1970 Staff Note to Civ.R. 49 cites a definition of

'determinative' as 'an issue the deciding of which by the jury may in and of itself dispose of the entire case:' " *Id.*

■ An interrogatory may be indeterminate because it is phrased in the disjunctive. Generally, great care should be taken to avoid combining issues disjunctively in an interrogatory because a "yes" or "no" answer may be construed as referring to either issue. It is proper, however, to phrase an interrogatory disjunctively in certain cases where there is no risk of a nonresponsive answer. In other words, where a "yes" answer to either question alone is enough to alone support a verdict based upon it. In a negligence case, for example, an interrogatory may validly ask whether the defendant knew or in the exercise of ordinary care ought to have known of a danger. Such disjunctive wording is proper because a "yes" answer to either question alone is enough to support a verdict finding negligence.

■ Turning to the present case, we find that although the wording of the interrogatory was not exemplary, it did not cause it to be indeterminate. The disjunctive phrasing was permissible because the interrogatory's wording was such that an affirmative response to either of the questions alone would have precluded relief. We find this to be true because the interrogatory focused on the *act* of exercising care. It is often true in wanton misconduct cases that the act or omission of care will occur prior to the date of the accident. Although the actual exercise or omission of care need not occur on the date of the accident, the exercise or omission of care must be tied to the accident. In other words, it needs to be relevant to the time of the accident.

In the present case, we find that the word "pertinent" in the interrogatory limited the prior acts to those that would be relevant to the accident. Black's Law Dictionary (6 Ed.1990) 1145, defines "pertinent" as applicable or relevant. Furthermore, it provides that evidence is pertinent when it is *directed to the issues or matters in dispute.* The colloquial use of the word "pertinent" is virtually identical to that found in a dictionary. In our view, the word "pertinent" would bring to mind in an average person the words "affect," "relate to," "apply to," or "concern." Conversely, the word "pertinent" would not invite the words "unrelated," "irrelevant," or "inapplicable."

Inasmuch as the prior act or omission need not have occurred on the date of the accident and that the term "pertinent" appropriately qualified the prior acts, we find that the question concerning DP & L's prior acts was relevant. As a consequence, we hold that an affirmative response to either of the questions alone would have been sufficient to negate a finding of wanton misconduct. Thus, we conclude that the interrogatory was determinative.

## B

Phillips also argues that the court should have disregarded the interrogatory as redundant, given that interrogatory F also tested the issue of whether DP & L was wanton. This argument is also not well taken. Although both interrogatories were mixed questions of law and fact, interrogatory F tested a legal conclusion, whereas interrogatory No. 2 tested the factual basis of that legal conclusion. Specifically, interrogatory F asked whether DP & L was wanton, while interrogatory No. 2 asked whether DP & L exercised any care. Hence, interrogatory No. 2 was not redundant because it tested the jury's understanding of the legal term "wanton." Consequently, we overrule Phillips's first assignment of error.

## III

In his second assignment of error, Phillips states:

"The trial court erred when it did not enter judgment on the general verdict as returned by the jury."

## A

Under this assignment of error, Phillips first argues that the trial court should have disregarded the jury's response to interrogatory No. 2 and entered judgment on the general verdict. Phillips claims that the court should have done so because the interrogatory was ambiguous. As support for this contention, Phillips relies on the holding in *Otte v. Dayton Power & Light Co.* (1988), 37 Ohio St.3d 33, 523 N.E.2d 835. Phillips asserts that *Otte* stands for the proposition that a judge may disregard answers to interrogatories when they conflict with the general verdict and appear to be ambiguous.

We do not find this argument persuasive. Given our determination that the interrogatory was not ambiguous, Phillips's interpretation of *Otte* would not apply in the present case. Furthermore, *Otte* does not support Phillips's contention. *Otte* dealt with whether the trial court should have entered judgment on the interrogatory answers instead of the general verdict. The defendant claimed that the trial court should have done so because the jury interrogatories were inconsistent with the general verdict.

The court agreed that judgment may be rendered on the answers when they are inconsistent and irreconcilable with the general verdict. Nonetheless, the court reasoned that since the interrogatories in *Otte* were vague, the answers could have been construed by the trial court as not conflicting with the general verdict. Therefore, the court held that the trial court properly harmonized the answers and entered judgment on the general verdict.

■ We read *Otte* to hold that when the interrogatories are in conflict with the general verdict, the court must try to harmonize them with the general verdict if possible. If the interrogatories are incapable of being reconciled with the general verdict, however, the court may enter judgment on the answers. Hence, we do not believe *Otte* supports Phillips's claim that the trial court may disregard answers to ambiguous interrogatories.

## B

■ Alternatively, Phillips argues that the trial court should have harmonized the responses to the interrogatories and entered judgment on the general verdict. Phillips bases his claim on the disjunctive phrasing of interrogatory No. 2. That interrogatory asks if DP & L exercised care at a pertinent time prior to or on the date of the accident. Phillips argues that the court could have harmonized that interrogatory answer with the general verdict by construing it as meaning that DP & L did exercise care in the past, but not at the time of the accident.

This argument is also not well taken. Even if the trial court had construed the interrogatory answer as meaning that DP & L only exercised care in the past, the interrogatory would still have been irreconcilable with the verdict. This is true because the interrogatory restricted the past acts to those that were "pertinent" to the accident. Therefore, any act, either past or on the date of the accident, had to relate to or have a bearing on the accident. It then follows that an affirmative response to that question, no matter how it was construed, would not have supported or been reconcilable with a finding of wanton misconduct.

## C

Finally, Phillips asserts that once the trial court determined it was impossible to reconcile the responses to the interrogatories with the general verdict, the court should have disregarded both interrogatories and entered judgment on the general verdict. Phillips supports this claim with a case decided prior to the adoption of Civ.R. 49, *Klever v. Reid Brothers Express, Inc.* (1949), 151 Ohio St. 467, 39 O.O. 280, 86 N.E.2d 608. In *Klever,* the court distinguished between instances where interrogatories are internally consistent but inconsistent with the general verdict, and instances where the interrogatories are both internally inconsistent and inconsistent with the general verdict. The court wrote:

"In the event of inconsistent answers to interrogatories on the same issue, it is the duty of the court to harmonize such answers, if possible, but if it is impossible to harmonize such answers then they cancel one another and should be disregarded by the court." *Id.* at 475–476, 39 O.O. at 284, 86 N.E.2d at 612.

The court further held that if the interrogatories cannot be reconciled and the court disregards them, then the court is to enter judgment on the general verdict. Relying on *Klever,* Phillips argues in the present case that the trial court erred in resubmitting the irreconcilable interrogatories to the jury instead of disregarding them and entering judgment on the verdict.

In response, DP & L asserts that *Klever* is no longer good law because Civ.R. 49 was intended to replace prior case law on this issue. Civ.R. 49(B) provides:

"When one or more of the answers is inconsistent with the general verdict, * * * the court may return the jury for further consideration of its answers and verdict. * * *"

DP & L maintains that Civ.R. 49 covers this situation because when interrogatories are inconsistent, one or more of the interrogatories will necessarily be in conflict with the general verdict, and, as seen above, Civ.R. 49 clearly applies to conflicts between interrogatories and the general verdict. Given that Civ.R. 49 can be construed as addressing this situation, DP & L claims that *Klever* no longer controls.

Furthermore, DP & L insists that if *Klever* is applied and the interrogatories cancel one another there will be no test of "the jury's thinking in resolving an ultimate issue," which is the purpose of using interrogatories. *Riley v. Cincinnati* (1976), 46 Ohio St.2d 287, 298, 75 O.O.2d 331, 338, 348 N.E.2d 135, 142. This assertion is supported by the 1970 Civ.R. 49 Staff Notes, which provide that "[t]he special interrogatory to the jury and the special verdict are both directed toward the same objective: to test the thinking of the jury, that is, to make the jury stick to the facts and the law without applying 'layman's justice.'"

Our research on this issue has revealed an apparent conflict in the appellate districts. Two cases decided in the Tenth Appellate District support Phillips's argument that the interrogatories cancel one another. In *Caserta v. Allstate Ins. Co.* (July 23, 1985), Franklin App. No. 84AP–1036, unreported, 1985 WL 10083, the Tenth Appellate District held:

"Civ.R. 49(B) applies only where the interrogatories answered by the jury are inconsistent with the general verdict but are consistent with each other. However, in a situation such as is presented in this case where the interrogatories were inconsistent with each other in addition to the general verdict, a different procedure must be followed. The court may not select those interrogatories which it believes to be correct and enter judgment accordingly. Rather, the more proper procedure is that set forth in the *Klever* case cited above. Applying that rule, the trial court must first attempt to harmonize the special findings with the general verdict and enter judgment accordingly. However, where the interrogatories conflict with each other and some conflict with the general

verdict, the conflicting interrogatories cancel each other out and must be disregarded by the trial court. [Citation omitted.] Here, it was impossible for the trial court to harmonize the answers to the interrogatories, thus, they should have been disregarded, leaving only the general verdict in favor of plaintiff."

A more recent Tenth Appellate District case, *Thornton v. Parker* (1995), 100 Ohio App.3d 743, 654 N.E.2d 1282, similarly held that Civ.R. 49 applies only to inconsistencies between the general verdict and one or more interrogatories and not to inconsistencies between the interrogatories. In addition, several other cases decided since the adoption of Civ.R. 49 have cited the holding in *Klever*, although not relying on it for the resolution of the case, impliedly recognizing its continued validity. *E.g., Midwest Specialties, Inc. v. Firestone Tire & Rubber Co.* (1988), 42 Ohio App.3d 6, 10, 536 N.E.2d 411, 415–416 (noting that if it is impossible to harmonize such answers then they cancel one another and should be disregarded by the court); *Nowell v. Aldridge* (Aug. 10, 1994), Hamilton App. No. C–930168, unreported, at 3, 1994 WL 416443.

On the other hand, several appellate districts, without recognizing *Klever* or the Tenth Appellate District cases, have applied Civ.R. 49 to inconsistent interrogatories. In *Ruda v. Hartman* (Sept. 20, 1990), Cuyahoga App.No. 57486, unreported, 1990 WL 135023, for instance, the appellant argued that the trial court erred in resubmitting interrogatories to the jury where the jury's initial answers were inconsistent. In particular, the appellant asserted that the court erred in resubmitting the same interrogatories instead of replacing them with clearer ones. Additionally, the appellant argued that the trial court erred in not instructing the jury as to the possible meaning of the inconsistent answers when it resubmitted them to the jury.

The Eighth Appellate District overruled these assignments of error, and held:

"When the general verdict and answers to interrogatories are inconsistent, the trial court, pursuant to Civ.R. 49(B), has three options: (1) the court may enter judgment consistent with the answers to the interrogatories; (2) the court may direct the jury to deliberate further; and (3) the court may order a new trial. * * * [Citation omitted.]

"In the present case, *the trial court, acting within its discretion, advised the jury of the inconsistency of its answers in Interrogatories No. 2 and 4 with its answers to Interrogatory No. 6 and sent the jury back for further deliberation. The jury thereafter resolved the inconsistency on its own* * * *. *Thus, we find the trial court did not err in refusing to substitute the interrogatories or in refusing to further instruct the jury on the discrepancies in their answers.*" (Emphasis added.) *Id.* at *3.

This court's holding implies that Civ.R. 49 applies to inconsistent interrogatories and that it is proper for a trial court to resubmit inconsistent interrogatories to the jury.

After reviewing these cases, we conclude that *Klever* is no longer controlling on this issue. The 1970 Staff Notes to Civ.R. 49 provide that the rule was designed "to broaden the function of the interrogatory to the jury" and that "broadening the scope of the interrogatory to the jury is intended to afford a fresh start in testing the thinking of the jury." Furthermore, the Staff Notes provide that the purpose of using interrogatories is to test or verify the general verdict.

We find that if *Klever* applies and conflicting interrogatories cancel one another, then the purpose of interrogatories—which is to test the general verdict—is thwarted. To demonstrate this, we will consider the analogous situation of interrogatories that are internally consistent but in conflict with the general verdict. When such interrogatories are returned, it is generally assumed that the jury was under a misconception or was confused. An example of this is a case where a jury does not understand the elements of negligence. As a result, the jury might return a verdict in favor of the plaintiff, but also find that the defendant's action did not have a bearing on the plaintiff's injury, thus negating proximate cause. In that situation, the integrity of the verdict is questioned, and Civ.R. 49 does not allow the court to enter judgment on the verdict.

Instead, Civ.R. 49 gives the court several means to enter judgment in accord with the jury's true intentions. One of those options is to enter judgment on the interrogatory answers. When the interrogatory answers are internally consistent, they are a better test of the jury's intentions because they test the jury's factual determinations. If the jury's intentions are obvious from the answers, the court may properly enter judgment upon them.

Otherwise, the court may resubmit the answers and verdict or order a new trial. Again, the policy behind these two options is the same, to provide a means for the court to ascertain the jury's true intentions. The court may resubmit the interrogatories and verdict to allow the jurors to work through any misunderstanding they may have been under and to correct any mistakes in their responses to conform the verdict to their intention. Or, if the court is unable to ascertain the jury's intentions, and the court is convinced that the jury will not be able to clarify their intentions, the court may order a new trial in an attempt to be presented with a verdict more clearly in line with the jury's intentions.

We find that this policy underlying Civ.R. 49 is even more compelling where the interrogatories are both internally inconsistent and in conflict with the general verdict. In that case, the integrity of the verdict is even more suspect. If we were to apply the holding in *Klever*, we would be commanded to enter

judgment on a highly suspect verdict without any means of testing that verdict. We do not think that would be a wise policy.

█ Notwithstanding this policy consideration, we believe that a plain reading of Civ.R. 49 confirms that it was intended to apply to interrogatories in conflict with the general verdict, regardless of whether the interrogatories are also internally inconsistent. As we have already stated, Civ.R. 49 broadly provides that the trial court may in its discretion resubmit the interrogatories when one or more is in conflict with the verdict. It does not specifically require that the interrogatories also be internally consistent. Since Civ.R. 49 does not explicitly require that the interrogatories be internally consistent, and given that one internally inconsistent interrogatory will necessarily be in conflict with the general verdict, we hold that Civ.R. 49 applies equally to inconsistent interrogatories.

Our reading of Civ.R. 49 is in accord with our prior case law and McCormac's Ohio Civil Rules Practice. In a recent opinion, authored by Judge Brogan of this court, citing *Elio, supra,* we wrote that "[t]he Ohio Supreme Court has held that a trial court may send a jury back to reconsider answers to interrogatories which are insufficient, incomplete, or *contradictory* or show a misconception of the question." (Emphasis added.) *Smiley v. Leonard* (Feb. 16, 1994), Montgomery App. No. 14071, unreported, at 9, 1994 WL 47675. Similarly, McCormac acknowledged that when answers to interrogatories are inconsistent with each other, with one consistent with the general verdict:

"[T]he equitable course of action would be to order a new trial rather than final verdict for defendant in accordance with the answer inconsistent with the general verdict. A *more preferable* [*sic*] course of action * * * would be for the trial court to require the jury to retire again and make the answers consistent." (Emphasis added.). McCormac, Ohio Civil Rules Supplement (1987) 142, Section 12.20.

█ We further conclude that the trial court is vested with broad discretion in choosing which option to apply under Civ.R. 49. Only the judge who has presided over the trial is in a position to appreciate the nuances of the evidence presented and the patterns of opposing arguments. The trial judge is best able to determine the proper remedy under Civ.R. 49 because of his direct experience with the trial itself. We note, however, that the first option under the rule, entering judgment on the interrogatories, is not available when the interrogatories are also internally inconsistent. That option is logically predicated upon the jury returning internally consistent interrogatories. Additionally, although the preferable option is to resubmit the answers and interrogatories, *Shaffer v. Maier* (1994), 68 Ohio St.3d 416, 421–422, 627 N.E.2d 986, 990–991, the trial court's

choice between the options should reflect the degree of confidence it has in the jury's ability to straighten out the inconsistency without compromising the fairness of the process or the integrity of the result. Accordingly, this assignment of error is overruled.

## IV

In his third assignment of error, Phillips asserts that:

"The trial court erred in requiring the jury to reconsider factual determinations conclusively made by it."

Phillips also claims that Civ.R. 49 should not apply because jurors should never be allowed or required to change their findings on factual determinations. Phillips relies on *Elio,* 147 Ohio St. 363, 34 O.O. 301, 71 N.E.2d 707, for this proposition. As noted above, *Elio,* which was also decided before Civ.R. 49 was enacted, held that:

"In some instances issues, questions or interrogatories may be resubmitted and the jury sent out again under apt instructions to remedy or correct defects or errors in their original answers, findings or verdict, as where * * * they have given answers which are insufficient, incomplete, improper, irregular, evasive, unresponsive, indefinite, uncertain, contradictory, or not sufficiently clear, or show a misconception of the questions. However, the authority to adopt this procedure is very limited; it should not be adopted where there is no reason therefor, *and the jury should not be allowed or required to reverse its findings on vital issues of fact depending on the evidence.*" (Emphasis added). *Id.* at 371, 34 O.O. at 305, 71 N.E.2d at 711–712.

As further support for this proposition, he cites to *Bradley v. Mansfield Rapid Transit, Inc.* (1950), 154 Ohio St. 154, 42 O.O. 221, 93 N.E.2d 672. Phillips asserts that *Bradley* also holds that a trial court may not resubmit interrogatories to the jury and allow jurors to change their factual determinations.

Phillips's argument is not well taken. Civ.R. 49 clearly allows the jury to reconsider its factual determinations when its answers are in conflict with the general verdict, and we fail to see how allowing the court to resubmit internally inconsistent interrogatories could be any more dangerous. In either instance, the jury may decide to reconsider its factual determinations and revise its answers. Consequently, we find no greater risk in the latter situation than the former.

Furthermore, although the above-quoted portion of *Elio* is accurate, paragraph two of its syllabus qualifies when the court may not return factual determinations to the jury. It provides:

"A trial court has no authority to require a jury to revise or reframe its answer to an interrogatory *when the intention of the jury may be obtained from the answer given.*" (Emphasis added.)

Likewise, the court in *Bradley* took issue with the trial court's resubmitting the interrogatories to the jury because the jury's intention was clearly ascertainable from the interrogatories. Additionally, the courts in both *Elio* and *Bradley* found the resubmission of the interrogatories objectionable because the trial courts in those cases coached the jurors on how they were to conform their interrogatories to the general verdict.

Therefore, we conclude that neither *Elio* nor *Bradley* holds that a jury may not make substantive changes to contradictory answers. Rather, *Elio* and *Bradley* allow the jury to make substantive changes when the intention of the jury cannot be ascertained from their answers. Those cases do, however, prohibit the court from indicating or suggesting that such an alteration should be made. Our reading of *Elio* and *Bradley* is supported by the more recent holding in *DeBoer v. Toledo Soccer Partners, Inc.* (1989), 65 Ohio App.3d 251, 258, 583 N.E.2d 1004, 1008–1009. In *DeBoer*, the court, relying on *Elio* as authority, held that the jury may make changes to conform its verdict to its intentions and avoid the necessity of a new trial, but that the court cannot invade the province of the jury by suggesting or implying that the jury came to the wrong conclusion.

Similarly, we hold that a court may resubmit interrogatories internally inconsistent and inconsistent with the general verdict as long as the court informs the jurors only that their answers to particular interrogatories are in conflict and that they may or may not alter them. The court should also tell the jury that the purpose of interrogatories is to ascertain the jury's true intentions, and that the jury must carefully consider whether the interrogatories in their present form represent those intentions. Furthermore, the court should state that if the interrogatories do represent their intentions, then they should not alter them. However, if the interrogatories do not, then they should conscientiously consider how they could alter them so that they would conform and that they should then revise their interrogatories accordingly.

In the present case, we find that the jurors' intentions were unable to be ascertained from the interrogatories because they were incapable of being reconciled. Therefore, the court properly exercised its discretion and resubmitted the interrogatories to the jury. In doing so, the court appropriately informed the jury of the conflict and told the jurors that they could, but were not required to, change their answers. The court did not suggest how to resolve the

inconsistency or that they reached the wrong conclusion. Hence, we conclude that the court acted properly and overrule this assignment of error.

## V

In his last assignment of error, Phillips contends:

"The trial court erred when it required the jury to redeliberate, but failed to follow the requirements of Civil Rule 49(B)."

Phillips asserts that Civ.R. 49(B) requires that the court resubmit both the answers and verdict when the court decides to return the jury for deliberation to resolve an inconsistency. Therefore, he claims that the trial court erred in the present case by resubmitting the two contradictory responses without the general verdict.

■ Civ.R. 49(B) provides that when one or more interrogatories is inconsistent with the general verdict, the court may "return the jury for further consideration of its answers and verdict." We find that Phillips is probably correct that Civ.R. 49(B) requires that the court resubmit both the interrogatories and verdict. Notwithstanding, we decline to address this assignment of error because Phillips failed to call the trial court's attention to this objection at a time when the error could have been avoided. *State v. Williams* (1977), 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364, paragraph one of the syllabus. Although Phillips did object to the court's decision to resubmit the interrogatories, he never objected to the manner in which the court decided to do so. This error could have been easily corrected, and given that it was not raised, we find that it was waived. Therefore, this assignment of error is overruled.

*Judgment affirmed.*

BROGAN, P.J., and GRADY, J., concur.